UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Twin City Fire Insurance Company and Hartford Fire Insurance Company, <br> *Plaintiffs*, <br><br> v. <br><br> Innovative Aftermarket Systems, L.P., a/k/a Innovative Aftermarket Solutions, Inc., a/k/a IAS Partners, L.P., a/k/a I.A.S., Inc., <br> *Defendant*. | Civil No. 3:08cv328 (JBA) <br><br><br><br><br> January 15, 2009 |

**RULING ON DEFENDANT'S MOTION TO DISMISS**

Plaintiffs Twin City Fire Insurance Company ("Twin City") and Hartford Fire Insurance Company ("Hartford") filed this action seeking a declaratory judgment concerning their obligations to Defendant Innovative Aftermarket Systems, L.P. ("IAS") with respect to a putative class action pending in Missouri state court. Before the Court is IAS's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on ripeness grounds. As explained below, the Court finds that this case is not ripe for adjudication and grants Defendant's motion.

I.      **Background**

The relevant facts are uncontested. According to the complaint, IAS is in the business of selling and administering agreements known as "guaranteed asset protection" contracts or "debt waivers" that are incorporated into the financing of automobile purchases or leases. These contracts protect car buyers and lessees against the risk that, if their vehicle is totaled or stolen, they will remain responsible for any unpaid balance on their loan or lease. IAS in turn obtains insurance for their debt waivers through policies issued by underwriters including Twin City (and thus Hartford, its parent company).

In October 2006, three car buyers holding IAS's debt waivers sued IAS in Missouri state court, alleging deceptive trade practices and seeking class certification.  That case, captioned *Nowak, et al. v. Innovative Aftermarket Systems, L.P., et al.*, remains in the pre-trial stage and has yet to be certified as a class action.  On September 26, 2007, IAS's attorney sent a letter referencing the *Nowak* case "to demand that Twin City/Hartford tender defense and indemnity to IAS." (Compl., Ex. C, at 1.)  In March 2008, Plaintiffs initiated this case to seek a declaration that they owe IAS no such obligations, alleging that "[a]n actual controversy has arisen as to whether IAS has an entitlement to defense or indemnity in the *Nowak* Action." (Compl. ¶ 33.)

On April 14, 2008, IAS's attorney sent Plaintiffs' counsel another letter to clarify IAS's position.  Counsel for IAS wrote that the purpose of the earlier correspondence was to "gauge [Twin City and Hartford's] interest in participating" in a "mediation or settlement" of a broad class of claims related to the *Nowak* case, including claims implicating underwriters, such as Twin City and Hartford, which "had no present exposure in the *Nowak* Action." (Pls.' Opp'n, Ex. B-1, at 2.)  Counsel further emphasized that, because the *Nowak* litigation did not yet include a plaintiff holding a debt waiver underwritten by Twin City or Hartford, IAS was not requesting that Twin City or Hartford indemnify or defend it.

Shortly thereafter, IAS moved to dismiss this case on the ground that Plaintiffs' claim is not ripe because there is no present dispute between the parties.  Unless a class is certified in *Nowak* to include a plaintiff who holds a debt waiver insured by Twin City or Hartford, IAS argues, any determination of Plaintiffs' insurance obligations would be premature. (Def.'s Mem. at 8–9.)  Plaintiffs disagree, contending that class certification "is not a

prerequisite to ripeness," that IAS's letter retracting its demands should be disregarded, and that delayed adjudication would be prejudicial to their business interests. (Pls.' Opp'n at 10, 12.)

## II.   Discussion

### A.      Overview of the Ripeness Doctrine

Ripeness is a justiciability doctrine concerned with the timing of a lawsuit. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 579–80 (1985). The "basic rationale" of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977). A matter "is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotation marks omitted). Faced with the question of whether a case is ripe for adjudication, courts "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 149. This two-part inquiry stems from the constitutional requirement that federal courts adjudicate only cases and controversies as well as from traditional prudential considerations. *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005).

The Declaratory Judgment Act, in turn, provides a statutory basis for granting declaratory relief "[i]n a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). Upholding the constitutionality of the Act, the Supreme Court distinguished between "a real and substantial controversy admitting of specific relief through a decree of a conclusive character" and "an opinion advising what the law would be upon a hypothetical

state of facts," and ultimately concluded:

> Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages.

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937).  Jurisdiction over a declaratory-judgment action may exist despite the underlying basis of liability being contingent, but in assessing its jurisdiction a court "should focus on 'the practical likelihood that the contingencies will occur.'" *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992) (quoting 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2757, at 587 (2d ed. 1983)).  Furthermore, district courts have discretion "to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003).

### B.    Declaratory Judgments and the Insurance Industry

Disputes over insurance coverage often present themselves as declaratory-judgment actions.  According to Wright, Miller & Kane:

> It is clear that in some instances a declaratory judgment is proper even though there are future contingencies that will determine whether a controversy ever actually becomes real.  The familiar type of suit in which a liability insurer seeks a declaration that it will not be liable to indemnify an insured person for any damages the injured person may recover against the insured is an example.  The injured person may not sue or the injured person may not obtain a judgment against the insured, but there is held to be sufficient controversy between the insurer and the injured person that a declaratory judgment is permissible.  In other instances the contingency is so remote and unlikely that declaratory relief cannot be had.

10B C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2757, at 476 (3d ed. 1998).  After recognizing the constitutionality of § 2201 in *Haworth*, for example, the Court

went on to hold that an actual controversy existed in a case brought by an insurance company against a policyholder seeking a declaration that it had no obligation to pay disability benefits due to non-payment of premiums.  300 U.S. at 242.

The Supreme Court took up another insurance case raising a similar issue a few terms later, noting that in "differen[tiating] between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act" the issue is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). There, the insurer sued the insured based on a liability policy obligating the insurer to indemnify and defend the insured for any actions seeking damages brought against it. *Id.* at 271.  When a third party was injured following an automobile accident with a truck driven by an employee of the insured and a suit for damages followed, the insurer brought its own action seeking a declaration that it was not liable under the terms of the policy. *Id.* at 271–72.  Finding the controversy not too remote for adjudication, the Court held that "[i]t is clear that there is an actual controversy between petitioner and the insured." *Id.* at 274.

The Second Circuit similarly has recognized jurisdiction under § 2201 in insurance disputes.  In *Associated Indemnity Corp.*, for example, a company entered into a consent decree with the Environmental Protection Agency regarding the company's obligation to pay remediation costs for a contaminated industrial site.  961 F.2d at 34.  The company and its insurers then sued and countersued, seeking identical declaratory judgments to determine the company's insurance coverage for its remediation liability—coverage which was triggered only if the liability exceeded $25 million.  *Id.*  The appeal concerned the district

court's award of sanctions in favor of one of the insurers based on the company's asserted position that an actual case or controversy existed despite the contingency. *Id.* Reversing the district court, the Second Circuit found that, given the EPA's generous and out-of-date estimate of the cost, the contingency in the insurance coverage was not sufficiently remote to preclude federal jurisdiction. *Id.* at 35–36. The Second Circuit reached the same conclusion in *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177–78 (2d Cir. 2001), where the panel agreed with the district court that, with the evidence showing that "there was a 'practical likelihood' that the high level excess carriers' policies would be reached," the "claims against the high level excess insurers presented an actual case or controversy."

 **C.**  **Analysis of Plaintiffs' Claims**

 Turning to the allegations in this case, the factual posture is qualitatively different from those cases in which jurisdiction existed over requests for declaratory relief involving insurance policies. Importantly, the Plaintiffs agree with a central premise of the Defendant's basis for dismissal:

> Plaintiffs agree with Defendant . . . that the underlying action does not expose IAS to any liabilities for which it could rightfully seek indemnity or a defense from Plaintiffs. Plaintiffs further agree with IAS that the underlying action does not trigger any policies of insurance issued by Plaintiffs.

(Pls.' Opp'n at 1–2.) According to Plaintiffs, the named plaintiffs in the *Nowak* litigation are not asserting claims based on policies issued by Twin City or Hartford, which means that the Defendant could not seek indemnification from Plaintiffs based on the current claims asserted in the *Nowak* litigation.

 Plaintiffs assert that this action is nevertheless fit for adjudication because there is a possibility that a class will be certified in *Nowak* which could include individuals holding

debt waivers implicating Twin City and Hartford.  But the current absence of any such additional plaintiffs or class members in the underlying litigation makes this scenario purely conjectural.  Plaintiffs emphasize that "the heart of the controversy as between Plaintiffs and IAS will always relate solely to the existence of a duty to defend and/or indemnify."  (Pls.' Opp'n at 11.)  Yet, unlike in *Maryland Casualty Co.*, these duties are indisputably absent at this stage in the *Nowak* case, and it remains to be seen whether they could ever come into play.  To use the language of *Associated Indemnity Corp.*, the "practical likelihood" of this contingency occurring is unknown.  961 F.2d at 35.

Viewed a slightly different way, this case involves a sort of "double contingency" situation that scholars and courts find "not appropriate for a declaratory judgment."  10B C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2757, at 477; *see McCahill v. Borough of Fox Chapel*, 438 F.2d 213, 218 (3d Cir. 1971) (citing Hart & Wechsler).  The first contingency is the one common to typical disputes over insurance coverage: whether an insurer is liable on a policy issued to an insured for injuries sustained by a third party.  Whether or not the injured party has prevailed in a separate case against the insured, federal courts tolerate this contingent situation and allow the insurer to seek a declaratory judgment based on the actual dispute between the insurer and insured as adverse parties.  The factual scenario in this case involves a second layer of speculation, however, because there is the additional question of whether there are in fact injured parties whose debt waivers implicate insurance contracts issued by Plaintiffs.  Without further developments in *Nowak* demonstrating that Plaintiffs' policies are actually at issue, this doubly contingent premise makes the basis for federal jurisdiction too theoretical.

Plaintiffs emphasize the import of the correspondence sent by IAS concerning efforts

to settle a broad class of claims related to those in the *Nowak* case.  But as counsel for IAS noted during oral argument, the grounds for sending a demand letter are very different from the constitutional prerequisites for adjudicating a case in federal court—and, in any event, IAS later clarified in a subsequent letter that it was not purporting to seek indemnification or defense from Plaintiffs.  Defendant's correspondence notwithstanding, until a policy issued by Plaintiffs is implicated in *Nowak*, it would be premature to construe the terms of such a policy in this action.

Because policies issued by the Plaintiffs are not—or at least not *yet*—at issue in the *Nowak* litigation, the facts do not show a substantial and immediate controversy between Plaintiffs and IAS as parties with adverse legal interests.  To the extent there is any prejudice to the Plaintiffs from dismissing their current request for a declaratory judgment and delaying a determination of their potential liability, such hardship is not enough to overcome the reality that the absence of an Article III case or controversy makes the issues unfit for judicial decision.  *Abbott Labs.*, 387 U.S. at 149.  Thus, with no live dispute between these parties, the Court cannot proceed without violating the constitutional prohibition against giving advisory opinions.  *See Flast v. Cohen*, 392 U.S. 83, 96 (1968).  This case is not ripe for adjudication.

III.     **Conclusion**

Accordingly, Defendants' motion to dismiss [Doc. # 18] is granted.  The Clerk is directed to close this case.


IT IS SO ORDERED.


_____/s/_____
Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 15th day of January, 2009.

9